January 24, 2025

Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

      **Re: *Doe v. FullStory, Inc., et al*, Case No. 3:23-cv-00059-WHO (VKD)**

Dear Judge DeMarchi:

    Pursuant to the Court's Standing Order, Plaintiff Jane Doe II and Meta Platforms, Inc. ("Meta") submit this joint discovery dispute letter arising from Plaintiffs' Requests for Production of Documents to Meta, Set One ("Requests" or "Request No. __"), served March 27, 2024.

## I.    STATEMENT OF THE DISPUTE

    This letter concerns two disputes: (1) whether Plaintiff's Request No. 11, concerning which personnel or teams can access data collected through Meta's Tracking Technology generally, the purposes for accessing this data, how the data may be and are used, and any controls governing their use of that data is overbroad; and (2) whether the discovery sought by Plaintiff in Request No. 27 regarding Meta's use and potential use of Health or Medical Data and potential use of Favor User Data is relevant and proportional.

## II.    PLAINTIFF'S POSITION

    The Requests below seek evidence relating to two core issue in this case: Meta's collection and use of Favor User Data. *See* ECF No. 133 ¶¶ 124-31. For each Request, Meta has sought to create an argument that these Requests are duplicative and unnecessary by offering to produce an extremely narrow set of information (so narrow that it is unlikely to exist) in response to a *different* Request. Meta cannot void Plaintiff's Requests on these grounds; its agreement to produce narrow documents in response to other Requests cannot be used as a shield to withhold discovery on other, separate Requests directly relevant to Plaintiff's claims.

    **Request No. 11** seeks to uncover who at Meta has access to data received through Meta's Tracking Technology, the purposes for this access, how it can be or is used, and any corresponding controls governing such use cases.

    Meta initially limited its production to documents reflecting the "general purposes" for accessing this data and the "primary controls" affecting such use. Plaintiff objected to Meta's response as imposing an arbitrary limitation on discovery because "each application or feature . . . that use[d]" the wrongfully acquired data was relevant to their "affirmative claims." *See Campbell v. Facebook Inc.*, 310 F.R.D. 439, 442-44 (N.D. Cal. 2015). Meta then revised its response to be even more ambiguous, claiming that it would produce documents "relevant to the claims and defenses in this action." Plaintiff could not accept this proposal, either, because it is unclear what, if anything, Meta would produce. *See Franklin v. United States,* No. 1:10-CV-00142, 2013 WL

1962678, at *4 (E.D. Cal. May 10, 2013) (explaining a discovery response that is limited to "relevant" documents makes it "unclear" whether the defendant has "fully complied with [the] request").

Following months of negotiation, and only after the Parties agreed to bring this dispute to the Court, Meta abandoned these positions for a *narrower* proposal. Now, Meta argues it will produce documents only if they reflect access to Favor User Data. This is unworkable. Documents relating to which personnel can access data are likely to be system or purpose specific (e.g., a log reflecting that employes 1-10 can access a database) and not application specific. There are likely no documents meeting Meta's limitation, i.e., those that reflect access *only* to Favor User Data. Meta cannot avoid discovery by strategically designing its response to create a null set.

This is not a theoretical possibility. Indeed, Meta's section below recognizes the need to ***expand*** its search in response to Request No. 11, subpart (4), to capture documents relating to the controls governing its Tracking Technology generally, because limiting that search to controls imposed on Favor User Data, specifically, is likely to return zero documents. Meta's willingness to conduct a larger search for documents relating to data controls—which is part of its defense—while excluding those documents relating to use and access, is clear gamesmanship.

Meta's argument that Request No. 11 is duplicative of Request No. 13 is wrong. Request No. 13 seeks documents "sufficient to show" which Meta employees actually accessed Favor User Data, when, why, and how they used it. To the extent documents like this exist, it would most likely be an access log or similar record. Request No. 11, on the other hand, captures the separate, but relevant, universe of documents dealing with how and why data collected through Meta's Tracking Technology is used. As with documents reflecting Meta's data controls, these are unlikely to be application or website specific. For instance, documents describing how Meta's ads department or machine learning engineers access data obtained through its Tracking Technology would apply to Favor User Data even though they discuss those topics more generally. Each would be responsive to Request No. 11, but would not be responsive to Request No. 13.

Finally, Meta cannot resist discovery by generally claiming there is a non-descript "burden" with producing responsive documents. *See Renn v. Otay Lakes Brewery, LLC*, No. 23-CV-1139, 2024 WL 4093188, at *4 (S.D. Cal. Sept. 5, 2024) (rejecting "conclusory" and "[u]nsupported" burden claims). The Court should overrule these objections and order Meta to respond to Request No. 11 as written.

**Request No. 27,** as modified, seeks documents discussing, evaluating, quantifying, or analyzing (1) potential uses of Favor User Data; and (2) uses or potential uses of Health or Medical Data.

Meta's claim that subpart (1) seeks irrelevant documents is wrong. Documents that discuss potential uses of Favor User Data are directly relevant to Plaintiff's claims, including to demonstrate that this data had objective value. These documents are equally relevant to rebutting Meta's 25th affirmative defense, which claims that any interception is not actionable because it was a party to the communication. *See* ECF No. 139 at 35. Courts have rejected this defense where evidence shows the defendant had the "capability to use its record of the interaction for any other

purpose." *See, e.g., Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). Consistent with these decisions, documents showing that Meta recognized "potential uses" for Favor User Data will prove that it had the "capability" to use this data for its own purposes and thus was not a party to the communication.

Meta also refuses to produce any documents responsive to subpart (2) of this Request on the grounds that Meta's "use" and potential uses of Health or Medical Data are not relevant. This is also incorrect. Favor User Data is a *subset* of the Health or Medical Data that Meta receives and uses. Accordingly, any documents discussing Meta's use or potential use of Health or Medical Data will also apply to Favor User Data. Indeed, it is more likely that Meta will have documents responsive to subpart (2) of this Request, as opposed to subpart (1) (which is specific to Favor), because it is unlikely Meta would discuss using data from one specific client, as opposed to a category of data (e.g., health data). The Court should not permit Meta to withhold these documents under the guise that Health or Medical Data is somehow irrelevant because Favor User Data *is* Health or Medical Data.

Meta also claims this discovery is unnecessary because it has agreed to produce documents relating to its *actual* use of Favor User Data in response to Request No. 12. This makes little sense. Documents relating to Meta's *actual* use of Favor User Data are not the same as documents relating to its *capacity to use* or *potential* uses for Favor User Data, both of which are independently relevant, as described above. *See Camp v. L.A. Arena Co., LLC*, No. 522-CV-02220, 2024 WL 1634095, at *17 (C.D. Cal. Mar. 22, 2024) (finding that "similar" requests "are not duplicative, nor are they harassing" because "they seek relevant information").

Likewise, just because Meta has agreed to produce documents regarding the value of Favor User Data and Health or Medical Data in response to Request No. 26, does not mean it should be allowed to withhold documents relating to its *use or potential use* of this data in response to Request No. 27. Even assuming documents responsive to Request No. 26 exist (e.g., a document in which a Meta employee says Health or Medical Data is worth $X), this does not make documents responsive to Request No. 27 unnecessary or duplicative. If there are documents in which Meta discusses *potential uses* of Favor User Data or Health or Medical Data, these documents can be used to ***independently*** and ***objectively*** quantify the value of this data through expert testimony. Indeed, if Plaintiff were to rely solely on Meta's own employees' estimations of the value of this data (responsive to Request No. 26), Meta would undoubtedly argue this is insufficient to quantify unjust enrichment or damages. Meta should not be able to short-circuit anticipated damages calculations by withholding discovery.

The cases Meta cites do not support its position in the slightest. *See Palmer v. HSBC Bank*, USA, N.A., No. 22-CV-02178, 2022 WL 3335932, at *2 (N.D. Cal. Aug. 12, 2022) (rejecting discovery relating to dismissed privacy claim); *Rojas v. Bosch Solar Energy Corp.*, No. 18-CV-05841, 2020 WL 8617421, at *2 (N.D. Cal. Sept. 18, 2020) (affirming requests using "broad language relating to a variety of topics" were disproportional); *Gil v. Sanchez*, No. 17CV698, 2018 WL 1621519, at *2 (S.D. Cal. Apr. 4, 2018) (finding documents relating to plaintiff's transfers to certain prisons were irrelevant to his wrongful transfer claim against different facility). Unlike those cases, the discovery sought here is narrowly tailored and directly relevant to live claims.

Documents responsive to Request No. 27 will directly aid in presenting a damages theory for Plaintiff's invasion of privacy claims, as well as substantiating Plaintiff's claim that Meta received unjust benefits without proper compensation through its interception of health data.

## III. META'S POSITION

*__RFP 11.__* This overbroad request seeks information regarding Meta's "Tracking Technology" generally.[1] After plaintiff rejected several reasonable proposals Meta made to remedy this overbroad request, Meta offered to provide narrowly tailored information focused on **the user data at issue in this case**—the user data Meta received *from* Favor. Plaintiff refused to consider this proposal or wait for the results of this search to see if it would satisfy her needs, instead demanding to bring the dispute to the Court. Plaintiff's demand is unreasonable and should be denied. Meta proposed to search for and produce documents regarding (1) the personnel or teams who had access to user data received via the Meta Pixel or SDK from Favor; (2) the purposes for which personnel or teams had access to user data received via the Meta Pixel and SDK from Favor; (3) the purposes for which user data received via the Meta Pixel or SDK from Favor was used; and (4) the controls, systems, processes, or rules that Meta had in place to prevent the use of user data received via the Meta Pixel or SDK from Favor during the Relevant Time Period. Plaintiff insists that limiting Meta's search to documents regarding the data received via the Meta Pixel or SDK from Favor is overly narrow and likely to return a null set. Not so.

Another RFP to which Meta has already agreed shows the fallacy in plaintiff's position. In RFP 13, plaintiff demanded documents specific to user data Meta received from Favor—who accessed it, when, for what purpose, and how it was used—showing that plaintiff actually believes there are likely to be documents on these topics, contrary to her speculation above.[2] RFP 13 overlaps completely with Meta's proposed responses to sub-sections (1), (2), and (3) of RFP 11. Given that plaintiff wants Meta to search for Favor-specific information and expects there to be documents specific to Favor user data in the context of RFP 13, it is appropriate to apply the same scope for Meta's responses to RFP 11(1)–(3).

Meta's limitation is reasonable. Plaintiff's claims relate solely to user data Meta received *from Favor*. She articulates no reason why discovery regarding general access to and use of data Meta received via the Pixel and SDK from countless other developers—including those that are

---

[1] RFP 11 requests documents regarding (1) which personnel or teams have access to data, or derivatives thereof, collected through Your Tracking Technology; (2) the purposes for which personnel or teams have access to data, or derivatives thereof, collected through Your Tracking Technology; (3) how data, or derivatives thereof, collected through Your Tracking Technology may be and are used; and (4) any controls, systems, processes, or rules in place to prevent the use of data, or derivatives thereof, collected through Your Tracking Technology.

[2] Plaintiff's supposed fear that "[t]here are likely no documents meeting Meta's limitation" is unsupported, and otherwise premature. Plaintiff can raise any concerns after plaintiff reviews Meta's forthcoming productions rather than waste the Court's time now based on theoretical concerns.

not health-related—are relevant or proportionate to the needs of the case. Indeed, in rejecting Meta's earlier proposals, plaintiff argues she is entitled to discovery regarding access to "the wrongfully acquired data." But plaintiff does not allege that **all** data Meta received through its "Tracking Technology" was wrongfully acquired—nor could she. Access to and use of data that has nothing to do with this case is not relevant to plaintiff's claims. And requiring Meta to search for and produce irrelevant documents is not proportional to the needs of the case. FRCP 26(b)(1).

Regarding sub-section (4) of RFP 11 seeking information about controls, rules or processes to prevent the use of data through Meta's "Tracking Technology," Meta explained that to the extent Meta cannot identify responsive, non-privileged documents about user data received from Favor specifically, it would take a broader approach. Meta proposed that it would search for documents pertaining to Meta's Business Tools more generally that would likewise apply to data received from Hey Favor (even if that data is not specifically referenced), and would consider any such documents responsive and produce them. Meta's willingness to conduct a larger search for documents relating to data controls is not "gamesmanship;" it is a reasonable and proportionate approach offered in the interest of compromise, and plaintiff is not entitled to more.

*RFP 27.* *Potential* uses of either Favor user data or health or medical data generally are irrelevant to the claims and defenses in this action, and discovery into the actual use of health or medical data generally is not proportional. This is especially true here, where Meta already agreed to respond to other requests concerning Meta's *actual use* of user data received via the Meta Pixel or SDK from Favor during the Relevant Time Period (RFP 12), and the *actual value* to Meta of that data (RFP 26). The Court should reject plaintiff's request for documents regarding hypothetical "potential" uses and use of data unrelated to this case.

*First*, plaintiff asserts that documents concerning Meta's potential uses of user data "demonstrate that this data had objective value." and "can be used to ... quantify" the value of the data through an expert. But Meta has already agreed to search for and produce responsive, non-privileged documents and communications regarding (1) the value of data received via the Meta Pixel or Facebook SDK from Favor during the Relevant Time Period; and (2) the value of health or medical data (as the Court defines that phrase), to the extent such documents exist and fall within the Relevant Time Period in response to RFP 26.[3] Because any documents Meta produces in response to those requests will reflect the actual value to Meta of that data, there is no basis for plaintiff to also demand documents about potential uses that would purportedly show potential value. "Potential uses" of data that Meta did not actually implement (and therefore did not derive any benefit or value from) are irrelevant to the claims and defenses in this action, including with respect to damages. *See Palmer v. HSBC Bank*, *USA, N.A.*, No. 22-CV-02178-VC-LB, 2022 WL 3335932, at *2 (N.D. Cal. Aug. 12, 2022) (refusing to compel further discovery because "plaintiff did not demonstrate that all information sought is relevant to the live claims and defenses or proportional to the needs of the case."); *Rojas v. Bosch Solar Energy Corp.*, No. 18-CV-05841-BLF, 2020 WL 8617421, at *2 (N.D. Cal. Sept. 18, 2020) (affirming denial of plaintiffs' motion

---

[3] The Parties dispute, and have separately briefed, the definition of "health or medical data" as used in RFPs 1, 17, 18, 26, and 27.

to compel where magistrate judge "correctly determined" that "Plaintiffs have 'not shown that the requested documents are proportional to the needs of the case . . . .'").

*Second*, plaintiff argues that Meta's "capability" to use the data is relevant to Meta's twenty-fifth defense that there is no actionable interception. This is a red herring. Meta has already agreed to search for and produce documents regarding the ways Meta *actually* used user data received from Favor. Those documents will necessarily reflect whether Meta had the capability to use the data at issue; there is no reason for Meta to also produce documents regarding "potential uses" that Meta did not actually implement. Plaintiff's argument that documents about "Meta's actual use of Favor User Data are not the same as documents relating to its capacity to use or potential uses for Favor User Data," is similarly unavailing; the documents Meta has agreed to search for and produce concerning actual use will reflect whether Meta had the capability to use the data at issue and how. *Gil v. Sanchez*, No. 17-CV-698-CAB-JMA, 2018 WL 1621519, at *2 (S.D. Cal. Apr. 4, 2018) (denying motion to compel where plaintiff sought "information about his transfers to institutions other than" where he was actually housed, as such information "is neither relevant to the claims made in this case, nor proportional to the needs of the case"). Contrary to plaintiff's demand, discovery requests for speculation are not appropriate. The purpose of discovery is to provide information regarding things that *actually* happened that are relevant to the claims and defenses in a case. It is not a vehicle for plaintiff to inquire regarding things that potentially could have happened, but did not.

*Third*, plaintiff claims that "documents discussing Meta's use or potential use of Health or Medical Data will also apply to Favor User Data." This is a narrow case—plaintiff's claims relate to Meta's alleged receipt and use of health or medical data *from Favor*. Meta's use or hypothetical potential use of health or medical data generally is beyond the scope of this case and is not proportional. Meta has already agreed to search for and produce information concerning its *actual* use of the data at issue and the *value* of that data. Plaintiff is not entitled to more.

### IV. NEED FOR A HEARING

Meta is available for a hearing on this issue if the Court would find one helpful. Meta prefers an in-person hearing if a hearing is ordered.

Plaintiffs believe a hearing would be helpful in resolving this dispute with the other Joint Discovery Dispute Letter filed contemporaneously by the Parties.

### V. CUT-OFF DATES FOR FACT AND EXPERT DISCOVERY

The Minute Order (ECF No. 161) sets forth the following dates for completion of fact and expert discovery:

**Substantial Completion of Class and Fact Discovery**: June 6, 2025

**Completion of Expert Discovery**: October 10, 2025

## VI. STATEMENT OF COMPLIANCE WITH STANDING ORDER

The Parties have complied with the Court's discovery dispute resolution procedures. Christian Levis and Amanda Fiorilla, lead counsel for Plaintiff, and Elizabeth McCloskey, lead counsel for Meta, met and conferred regarding these disputes via videoconference on December 27, 2024. The Parties agreed to brief these disputes after the new year.

## VII. LIST OF ATTACHMENTS

**Exhibit 1**: Excerpts of Plaintiffs' Requests for Production of Documents to Meta, Set One

**Exhibit 2**: Excerpts of Meta's Responses and Objections to Plaintiffs' Requests for Production of Documents, Set One

Dated: January 24, 2025

By: */s/ Christian Levis*
Christian Levis

**LOWEY DANNENBERG, P.C.**
Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
Rachel Kesten (admitted *pro hac vice*)
Yuanchen Lu (*pro hac vice* forthcoming)
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com
ylu@lowey.com

**LYNCH CARPENTER, LLP**
(Eddie) Jae K. Kim (CA Bar No. 236805)
117 East Colorado Blvd., Suite 600
Pasadena, CA 91105
Tel.: (626) 550-1250
ekim@lcllp.com

Gary F. Lynch (admitted *pro hac vice*)
Jamisen A. Etzel (admitted *pro hac vice*)
Nicholas A. Colella (admitted *pro hac vice*)
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Tel.: (412) 322-9243
gary@lcllp.com
jamisen@lcllp.com

nickc@lcllp.com

*Attorneys for Plaintiff and the Proposed Class*

By: /s/ *Lauren R. Goldman*
      Lauren R. Goldman

**GIBSON, DUNN & CRUTCHER LLP**

Lauren R. Goldman (admitted *pro hac vice*)
lgoldman@gibsondunn.com
Darcy C. Harris (admitted *pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:   (212) 351-4000
Facsimile:    (212) 351-4035

Elizabeth K. McCloskey, SBN 268184
emccloskey@gibsondunn.com
Abigail A. Barrera, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Attorneys for Defendants Meta Platforms, Inc.*